**Thomas J. SUEL and Amelia K. Suel, parents and next friends of David J. Suel, Petitioners–Appellees,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent–Appellant.**

No. 98–5153.

United States Court of Appeals, Federal Circuit.

Sept. 17, 1999.

Rehearing Denied Dec. 8, 1999.

Robert T. Moxley, Gage and Moxley, of Cheyenne, Wyoming, argued for petitioners-appellees.

Mary Hampton Mason, Attorney, Torts Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellant. With her on the brief were Helene M. Goldberg, Director, and John Lodge Euler, Deputy Director; and Gerard W. Fischer, Attorney.

Before MAYER, Chief Judge, LOURIE, Circuit Judge, and BLACK, District Judge.[*]

BLACK, Judge.

The Secretary of Health and Human Services ("the Secretary") appeals from the decision of the United States Court of Federal Claims which sustained a compensation decision by the Special Master issued pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa–1 to –34 ("the Act"). Based on the Secretary's failure to appeal the earlier remand by the Court of Federal Claims or to reopen the case on the entitlement issue on the basis of newly discovered evidence, the law of the case doctrine counsels affirmance.

*Factual Background*

David Suel was born on June 8, 1986, and appeared normal until he was approaching five months old. On October 22, 1986, David received his first Diphtheria–Pertussis–Tetanus ("DPT") vaccination. The Special Master found that within two days of the vaccination David's eyes began a rapid movement and rolled back into his head. David's father interpreted this as a sign of drowsiness. The next day David's eyes again rolled back. Over the course of the next week he began to nod his head and sleep more, until he was sleeping twenty hours a day. Within three weeks of the DPT vaccination, the child was dem-

[*] Honorable Bruce D. Black, District Judge, United States District Court for the District of New Mexico, sitting by designation.

onstrating measurable seizure activity, occurring approximately four times a day.

David Suel was admitted to the Minneapolis Children's Medical Center on November 29, 1986. A brain scan confirmed a diagnosis of tuberous sclerosis ("TS"). The physicians recommended David not receive further pertussis vaccine as it might aggravate his condition.

While research regarding the relationship between TS and DPT vaccine is ongoing, some things are not controverted. TS is an inherited genetic disorder. Tubers (lesions) exist in the brain at birth and do not multiply. David Suel has twenty tubers discernable by Magnetic Resonance Imaging.

### Procedural History

David's parents filed an application for compensation under the Act in September 1990. In 1991, Special Master Millman began taking testimony. In June 1993, Special Master Millman issued her first entitlement decision. She concluded petitioners had satisfied their burden of showing David had experienced his first seizure activity within three days of his DPT vaccination.[1] However, Special Master Millman held the Vaccine Act's presumption of causation did not apply to significant aggravation and was thus of no benefit to the Suels in meeting their burden. The Suels appealed and the Court of Federal Claims, per Judge Merow, reversed. Relying on *Costa v. Secretary of HHS*, 26 Cl.Ct. 866, 1992 WL 202265 (1992), Judge Merow held that once the petitioners had proven the seizure disorder was within the presumptive three-day period under the Table, it was the Secretary who must prove that TS alone caused the seizure disorder. After reviewing the evidence, Judge Merow concluded:

In the case at bar, the respondent did not show by the preponderance of the evidence that the seizure onset would have occurred at the age of five months solely because of the TS; indeed, the Special Master found that the DPT vaccine was "indeed a trigger to David's first seizure." Having failed to meet its burden of proof, the respondent can not prevail in this matter.

*Suel v. Secretary of HHS*, 31 Fed.Cl. 1, 10 (Fed.Cl.1993), *superseded by Whitecotton v. Secretary of HHS*, 81 F.3d 1099 (Fed. Cir.1996).

During the time period that this case was on appeal and then remanded for a determination of compensation, the Special Master had identified a number of cases alleging a causal relationship between vaccinations and seizure onset in TS patients. Discovery was held in an Omnibus proceeding encompassing these cases in the summer of 1996. At the hearing on the Omnibus TS proceedings, Special Master Millman inquired if the Secretary intended to make a motion before Judge Merow to reopen the entitlement decision in the present case. The Secretary's counsel, however, indicated the Secretary did not intend to move Judge Merow to reopen the entitlement decision in the case at bar on the basis of the evidence developed in the Omnibus TS proceeding. Special Master Millman then advised counsel for the Secretary that in the absence of such a motion she would lack jurisdiction to revisit the issue of entitlement. *See Suel v. Secretary of HHS*, 1997 WL 617034 at *1 ( Fed.Cl. 1997).

The Special Master then proceeded to consider and decide only the compensation issue remanded by the Court of Federal Claims. *See id.* She awarded the Suels compensation in the form of an annuity and specified how it should be paid.

---

1. Under 42 U.S.C. § 300aa–13(b)(2), a petitioner must establish a medical event, (in this case a significant aggravation of disease) within a certain period of time following the vaccination. This period of time is described in the Vaccine Injury Table ("the Table"). According to the Table, the time period for significant aggravation of a seizure disorder following a DPT vaccination is three days.

The Secretary appealed the compensation decision to Judge Merow. However, in the Court of Federal Claims, the Secretary sought to reopen that Court's 1993 entitlement decision based on the evidence newly developed in the TS Omnibus proceeding. Judge Merow rejected the Secretary's argument, saying:

The DPT vaccination involved in this matter occurred in 1986. The Special Master originally denied compensation in 1993 and, the same year, this decision was reversed, entitlement was determined to exist and the matter was remanded to the Special Master only for a compensation determination. It was totally inappropriate for this case to be associated with other TS cases pending before Special Masters, at the entitlement stage of their proceedings prior to any review by this Court. Prompt action to determine the amount of compensation, as called for by the Vaccine Act, would have finally concluded this case long before the Omnibus evidence was even developed. However, if it was then considered appropriate to associate this case with the other pending TS cases and re-try entitlement, it was incumbent upon the party seeking such action to move promptly in this Court for relief from the 1993 entitlement ruling. This was not done. To seek such action now, over four years later, and after a second full proceeding before the Special Master, properly limited to the issue of compensation, is simply too late.

J.A. at 43–44. Judge Merow declined to reopen the entitlement decision and sustained the compensation award.

### Discussion

As in the Court of Federal Claims, the Secretary is again attempting to reopen the entitlement issue she specifically declined to pursue in this proceeding in 1993. She argues that the evidence developed in the Omnibus TS case would lead to a different result on entitlement. The Secretary further challenges the reliance by both the Special Master and the Court of Federal Claims on the law of the case, contending that "a discretionary doctrine like law of the case may not support a construction that is inconsistent with an essential precept of the Vaccine Act – namely that prior to the entry of judgment, relevant and reliable evidence must be considered." Secretary's Br. at 26. Three of the premises on which this argument is based are in error because (a) Judge Merow's judgment on entitlement was final in 1993; (b) the evidence on which the Secretary would rely was not adduced in this case and therefore the law of the case cannot be avoided on the ground of new evidence; and (c) the law of the case doctrine often operates to reject "relevant and reliable evidence."

After remand Special Master Millman correctly recognized that Judge Merow's reversal of the initial entitlement claim was a final judgment. *See Maier v. Orr,* 754 F.2d 973, 981 (Fed.Cir.1985); *United States v. Turtle Mountain Band,* 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979). Therefore, Special Master Millman lacked the authority to reconsider the issue of entitlement unless a motion for reconsideration was granted by the Court of Federal Claims. *See Patton v. Secretary of HHS,* 25 F.3d 1021, 1026–27 (Fed.Cir.1994). This fact was specifically brought to the attention of the Secretary's legal counsel who expressly disavowed any intention of seeking reconsideration in the Court of Federal Claims.

Law of the case is a judicially created doctrine, the purpose of which is to prevent relitigation of issues that have been decided. *See Gould, Inc. v. United States,* 67 F.3d 925, 927–28 (Fed.Cir.1995). The doctrine operates to protect the settled expectations of the parties and promote orderly development of the case. *See Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573, 1582 (Fed.Cir.1994); *Little Earth of the United Tribes v. Department of HUD,* 807 F.2d 1433, 1441 (8th Cir. 1986). It "ensures judicial efficiency and

prevents endless litigation. Its elementary logic is matched by elementary fairness – a litigant given one good bite at the apple should not have a second." *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 890 (Fed.Cir.1984). Under law of the case, then, a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation. *See Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed.Cir.1985); *see also In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir.1991).

We recently applied the law of the case doctrine in a similar fashion to prevent the reopening of earlier decisions in *Hughes Aircraft Co. v. United States*, 86 F.3d 1566 (Fed.Cir.1996), *vacated on other grounds*, *United States v. Hughes Aircraft Co.*, 520 U.S. 1183, 117 S.Ct. 1466, 137 L.Ed.2d 680 (1997), *aff'd on remand*, 140 F.3d 1470 (Fed.Cir.1998). Hughes sued the federal government over its use of a spacecraft patent and the litigation lasted more than twenty years, resulting in fourteen judicial opinions. Appealing from the damages finally awarded by the Court of Federal Claims, the United States argued one of the earlier *Hughes* decisions by this Court had since been undercut by various opinions in other cases over the years. The majority rejected this argument and emphasized the importance of applying law of the case doctrine in protracted litigation. Then Chief Judge Archer noted:

The dissent apparently would decide *Hughes VII* differently if the case were before this panel, arguing that the approach taken by the *Hughes VII* dissent is the approach required under current law. This is not, however, a sufficient justification to refuse to follow law of the case. There is little doubt that this was a close case and reasonable minds could differ on the proper outcome of *Hughes VII*. Indeed, one member of the *Hughes VII* court dissented. That this was a close case, however, counsels in favor of abiding by the law of the case. *Chris-*

*tianson*, 486 U.S. at 819, 108 S.Ct. at 2179, 100 L.Ed.2d [at] 811, 7 USPQ2d at 1117. (" 'The doctrine of law of the case is ... a heavy deterrent to vacillation on arguable issues.' " (quoting 1B James W. Moore, et al., Moore's Federal Practice ¶ 0.404[1] (1984))). Simply because a different panel might reach a different conclusion, does not mean that the earlier decision is "clearly erroneous." *See id.* ... The litigants in this action deserve finality. Over such a long period of time, the composition of the panels of this court and the judge assigned to the case at the trial level has necessarily changed. As a matter of course, different judges looking at the same case may not view it in the same way. But under the law of the case, we must give respect and force to legal decisions rendered by earlier panels, absent a clear showing of error or injustice. Any other result would unduly prolong this already drawn-out litigation.

*Hughes*, 86 F.3d at 1577.

In his concurring opinion, Judge Bryson also emphasized the importance of adhering to the law of the case doctrine in a lengthy proceeding with the opportunity for interlocutory appeals:

If the law-of-the-case doctrine is to have any substance, it must sometimes require a judge to uphold a ruling on a question that the judge would decide the other way if it were presented for the first time. In order to serve the interests of judicial economy, finality, and avoidance of "panel-shopping," the doctrine strongly discourages reconsideration of issues that a previous panel has addressed, fully considered, and decided. *See Roberts v. Cooper*, 61 U.S. 467, 481, 20 How. 467, 15 L.Ed. 969 (1857) ("there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members"); *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580, 220 USPQ 490, 495

(Fed.Cir.1983). Moreover, in patent cases, where Congress has made special provision for interlocutory appeals, see 28 U.S.C. § 1292(c)(2), adherence to the law-of-the-case doctrine is especially important, as there are more opportunities for a party dissatisfied with a ruling from one panel to seek a different result from a second.

*Id.* at 1578.

The case at bar is analogous to *Hughes* in that it has now been pending many years. This passage of time may be as significant in a Vaccine Act case as in the patent issue involved in *Hughes.* Indeed, in rejecting the Secretary's attempt to reopen the present record to envelop the Omnibus TS proceedings, Judge Merow pointed out:

> It is recognized that in *Erve v. Secretary of DHHS,* 39 Fed.Cl. 607, 614 (1997), the factor of time is discounted in reviewing and reversing a decision by the Special Master not to reopen an issue of entitlement. However, to promote a lengthy, years-long search for ultimate truth ignores the basic premise of the Vaccine Act, set forth previously, that awards will be made "quickly, easily, and with certainty and generosity." The 1993 liability ruling has the support of the expert testimony on TS at that time, and for sometime thereafter. In *Koston v. Secretary of DHHS,* 974 F.2d 157 (Fed.Cir.1992), it is recognized that the "quickly, easily, and with certainty and generosity," is the applicable statutory scheme set by Congress and that its application can result in compensa-

tion that subsequent scientific advances may show were not, in fact, vaccine-related. This does not support prolonging proceedings to await the advance of science.

J.A. at 44.

■ The Secretary objects to the 1993 entitlement decision by Judge Merow but she expressly chose not to seek to reopen that decision at the time.[2] She now argues that other "relevant and reliable evidence" was adduced in the Omnibus TS case that should dictate a different result here. However, the new evidence relied upon to override law of the case must be substantial, even conclusive, before it is appropriate to reopen a judgment on which subsequent phases of the case have been decided. 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4478, at 800 (1981); Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation,* 135 U. Pa. L.Rev. 595, 609 (1987).

Finally, in order to reopen the entitlement judgment, new and compelling evidence must be offered in this case. *See Trans Ocean Van Serv. v. United States,* 200 Ct.Cl. 122, 470 F.2d 604, 615 (1973). It was not. The new evidence on which the Secretary now relies to avoid the entitlement decision was not offered in this case but in the Omnibus TS proceeding. As was noted below, "evidence developed for the entitlement issue on other TS cases does not impact 42 U.S.C. § 300aa–12(b)(1), as the evidence was not correctly in the record absent a prior negation of

---

**2.** It is particularly appropriate to invoke law of the case principles when a party has decided not to appeal an issue and further proceedings are conducted in reliance on that decision. *See Martinez v. Roscoe,* 100 F.3d 121, 123 (10th Cir.1996); *North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 63 F.3d 160, 164–65 (2d Cir.1995); *Pit River Home & Agr. Co-op. Ass'n v. United States,* 30 F.3d 1088, 1096–97 (9th Cir.1994). Even if the district court lacked jurisdiction, the appellate court may adopt a sound decision to protect the expectations on which subsequent actions

were taken. *See International Union, U.A.W. v. Donovan,* 756 F.2d 162, 164–65 (D.C.Cir. 1985). For this reason, courts will rarely reconsider liability after a remand for the calculation of damages or attorney's fees. *See Aguinaga v. United Food & Com. Workers Int'l Union,* 993 F.2d 1463, 1473 (10th Cir.1993); *Willy v. Coastal Corp.,* 915 F.2d 965, 968 (5th Cir.1990); *Lytle v. Commissioners of Election of Union County,* 541 F.2d 421, 425 (4th Cir. 1976); *cf. United States v. Tamayo,* 80 F.3d 1514, 1518–22 (11th Cir.1996) (re-sentencing properly limited to the one issue remanded).

the 1993 entitlement determination." J.A. at 44.

## Conclusion

David Suel is now thirteen. This case has been in litigation for almost a decade. Judge Merow entered a final judgment on the entitlement issue in 1993. The Secretary has failed to convince this Court that law of the case principles should not be applied to permit that decision repose. The Secretary does not otherwise challenge the compensation decision and we

**AFFIRM.**