LINN, Circuit Judge.
 

 Garry J. Augustine (“Augustine”) appeals from the judgment of the United States Court of Appeals for Veterans Claims (“Veterans’ Court”) affirming a Board of Veterans’ Appeals (“Board”) determination that a 1972 rating decision by the Department of Veterans Affairs (“DVA”) relating to the award of special monthly compensation (“SMC”) did not contain clear and unmistakable error.
 
 Augustine v. Principi,
 
 No. 00-1160, 2002 WL 1563486 (Vet.App. July 2, 2002). Because the Veterans’ Court’s conclusion that the Secretary had discretion not to award the next higher SMC rate was contrary to the mandatory language of 38 C.F.R. § 3.350(f)(3), and because the Veterans’ Court’s decision left the question of Augustine’s entitlement to the
 
 hk
 
 rate under 38 C.F.R. § 3.350(f)(l)(i) unresolved, we vacate
 
 the
 
 decision of
 
 the
 
 Veterans’ Court and remand the case for further consideration consistent with this opinion.
 

 BACKGROUND
 

 Augustine was caught in an enemy booby trap during service in Vietnam and
 
 *1336
 
 suffered serious injuries. In February-1972, he was awarded service-connected benefits for (1) shell fragment wounds to the upper and lower extremities, including loss of use of the left hand and left foot, rated at 100%; (2) a shell fragment wound to the right leg, rated at 10%; (3) post splenectomy, rated at 30%; and (4) scarring from shell fragments in the chest, back and abdomen, each rated at 10%. Augustine was also awarded SMC under 38 U.S.C. § 314(Z) based on the loss of use of one hand and one foot. This was increased to an intermediate rate between § 314(i) and § 314(m) (“the 1 $ rate”) under 38 U.S.C. § 314(p) because of Augustine’s additional disabilities of splenectomy and scars to his leg, chest, abdomen, and back.
 

 In February 1992, Augustine challenged the February 1972 rating decision as containing clear and unmistakable error, citing,
 
 inter alia,
 
 38 C.F.R. § 3.350. He argued that the loss of supination and pronation in his left elbow (i.e., the ability to turn the palm upwards or downwards) met the criteria for a diagnosis of “unfavorable ankylosis” under the YA Rating Schedule. Augustine maintained that he should have been awarded the
 
 Vk
 
 rate based on his elbow injury together with the loss of use of a hand and a foot under 38 C.F.R. § 3.350(f)(l)(i):
 

 Anatomical loss or loss of use of one extremity with the anatomical loss or loss of use of another extremity at a level or with complications preventing natural elbow or knee action with prosthesis in place will entitle to the rate intermediate between 38 U.S.C. 314(i) and (m).
 

 38 C.F.R. § 3.350(f)(1)(i) (1972). Augustine argued that the remainder of his injuries would then have qualified him for the next higher rate set forth in 38 U.S.C. § 314(m)-(“the m rate”).
 

 The Detroit Regional Office (“RO”) of the DVA found no clear and unmistakable error, on the ground that the amount of motion remaining in Augustine’s left elbow was “more than minimal motion and is not equatable to loss of natural elbow action.” Augustine had thus not shown “loss of use of one hand at a level or with complications preventing natural elbow action with prosthesis in place.”
 
 See
 
 38 C.F.R. § 3.350(f)(l)(i) (1972). The Board agreed with the RO that there was no clear and unmistakable error in the 1972 rating decision.
 
 In re
 
 Augustine No. 94-13043 (Bd. Vet.App. May 22, 1996). The Board denied Augustine’s request for reconsideration. On appeal, the Veterans’ Court vacated the Board’s judgment, finding its analysis “lacking in explanation and clarity.”
 
 Augustine v. West,
 
 16 Vet.App. 290, 1998 WL 700129, at *5 (1998)
 
 (“Augustine
 
 I”). The Veterans’ Court remanded for consideration of whether Augustine was entitled to an award of the 1$ rate under 38 C.F.R. § 3.350(f)(l)(i) based on the loss of use of his left foot and left hand coupled with his left elbow injury.
 
 Id.
 
 at *4-5.
 

 The Detroit RO denied the claim again on remand. Based on a definition of “natural elbow action” set forth in 38 C.F.R. § 3.350(c)(1), the RO held that to merit the
 
 Vk
 
 rate based on the elbow injury, Augustine would have had to show “ankylosis,” meaning “no movement in the joint.” Because Augustine’s left elbow had exhibited a range of movement (albeit no supination or pronation) at the time of the initial rating decision, the RO again found that the 1972 rating decision was not clearly and unmistakably erroneous. The Board also found no clear and unmistakable error.
 
 In re Augustine,
 
 No. 94-13043 (Bd. Vet.App. Mar. 10, 2000).
 

 
 *1337
 
 In a single-judge memorandum decision, the Veterans’ Court held on appeal that even if Augustine had been entitled to the 1
 
 lk
 
 rate as a matter of right based on his elbow injury, any further increase in the SMC rate based on additional injuries was a matter entrusted to the Secretary’s discretion under 38 U.S.C. § 314(p).
 
 Augustine v. Principi,
 
 No. 00-1160, 2002 WL 1563486, at *4 (Vet.App. July 2, 2002)
 
 (“Augustine II”).
 
 Because the Secretary might not have exercised that discretion, the Court found that it could not be the case that, but for the alleged error, the result would have been manifestly different.
 
 Id.
 
 Accordingly, the Court held that Augustine had failed, to demonstrate clear and unmistakable error in the 1972 rating decision. Augustine moved for a panel decision, citing 38 C.F.R. § 3.350(f)(3), which he characterized as “entitling] [him] to the m rate and leaving] no discretion for regional office adjudicators to award less.” The Veterans’ Court denied Augustine’s motion.
 

 Augustine appeals from the judgment of the Veterans’ Court. We have jurisdiction under 38 U.S.C. § 7292.
 

 ANALYSIS
 

 I. Jurisdiction and Standard of Review
 

 Subsection (a) of 38 U.S.C. § 7292 provides this court with jurisdiction to review a decision of the Veterans’ Court “with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation ... or any interpretation thereof ... that was relied on by the Court in making the decision.” 38 U.S.C. § 7292(a) (2000),
 
 amended by
 
 Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 402,116 Stat. 2820, 2832 (2002). Our jurisdiction under this statute, as amended, extends to the present case, in which the decision of the Veterans’ Court regarding the Secretary’s. discretion in granting an increase in the SMC rate would have been altered had the Veterans’ Court adopted the position being urged by Augustine.
 
 See Morgan v. Principi,
 
 327 F.3d 1357, 1360 (Fed.Cir.2003) (holding that this court has jurisdiction to review “issues of validity or interpretation raised before the Court of Appeals for Veterans Claims but not explicitly decided, if the decision would have been altered by adopting the position that was urged”). In reviewing a decision of the Veterans Court, we must set aside any interpretation of a regulation that we find to be,
 
 inter alia,
 
 arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 38 U.S.C. 7292(d)(1)(A) (2000).
 

 II. Section 3.350(f)(3)
 

 The Veterans’ Court concluded that even if Augustine had been granted the 1/6 rate under 38 C.F.R. § 3.350(f)(l)(i), any additional increase in the SMC rate would have been at the discretion of the Secretary under 38 U.S.C. § 314(p) and that the exercise of that discretion was not reviewable. Under that statute, Congress gave the Secretary discretion to determine if, and under what circumstances, SMC rate increases may be made: “in the event the veteran’s service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the [Secretary], in his discretion, may allow the next higher rate or an intermediate rate.” 38 U.S.C. § 314(p) (1970). The discretion granted to the Secretary in section 314(p) was not limited to any particular case and permitted the Secretary to draft rules delimiting how SMC rate increases are determined.
 
 Cf. Georgia v. United States, 411 U.S.
 
 526, 536, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973)
 
 *1338
 
 (holding that where a statutory provision granted authority to an agency head to take certain actions but did not specifically authorize the promulgation of regulations, the agency head could choose “to formulate and publish objective ground rules” so long as “these regulations are reasonable and do not conflict with [the governing statute] itself.”).
 

 Acting under the authority “to make all rules and regulations which are necessary or appropriate to carry out the laws administered by the Veterans’ Administration” set forth in 38 U.S.C. § 210(c)(1) and exercising the discretion granted in 38 U.S.C. § 314(p), the Secretary promulgated 38 C.F.R. § 3.350(f), which is entitled “Intermediate or next higher rate; 38 U.S.C. 314(p).”
 
 See
 
 27 Fed. Reg. 1561, 1563 (Feb. 24, 1961) (citing 38 U.S.C. § 210 as authority for issuance of,
 
 inter alia,
 
 § 3.350(f)). Section 3.350(f)(3) provides for a mandatory increase in the SMC rate when there are disabilities (other than those relied on to establish the statutory SMC rate) that are independently ratable at 50% or more:
 

 In addition to the statutory rates payable under 38 U.S.C. § 314© through (n) and the intermediate or next higher rate provisions outlined above, additional single permanent disability or combinations of permanent disabilities independently ratable at 50 percent or more will afford entitlement to the next higher intermediate rate or if already entitled to an intermediate rate to the next higher statutory rate under 38 U.S.C. § 314.... In the application of this sub-paragraph the disability or disabilities independently ratable at 50 percent or more must be separate and distinct and involve different anatomical segments or bodily systems from the conditions establishing entitlement under 38 U.S.C. § 314(¿) through (n) or the intermediate rate provisions outlined above.
 

 38 C.F.R. § 3.350(f)(3) (1972). Augustine argues that the loss of use of his hand and foot, together with his elbow injury, entitled him to the
 
 Vk
 
 rate under 38 C.F.R. § 3.360(0(1)0), and that 38 C.F.R. § 3.350(f)(3) entitles him as a matter of right to the higher m rate based on the remainder of his injuries.
 

 Section 3.350(f)(3), while promulgated under the exercise of the discretion given the Secretary in 38 U.S.C. § 314(p), itself contains no discretionary language. Rather, it states. that the additional injuries “will afford entitlement” to the higher rate. Here, the Veterans’ Court considered § 3.350 generally and held that, even if § 3.350(f)(l)(i) might apply, the Secretary had discretion not to award an increase in the SMC rate under § 314(p). But this overlooked the mandatory language of § 3.350(f)(3). Had the Veterans’ Court recognized that the regulation mandated an increase in the SMC rate, as Augustine argued, it would have had to determine Augustine’s eligibility for the 1]6 rate in 1972 under § 3.350(f)(l)(i) as a predicate to determining whether § 3.350(f)(3) would then have mandated an increase to the m rate. To the extent that the Veterans’ Court concluded that the Secretary retained discretion not to award the next higher rate to Augustine despite the wording of 38 C.F.R. § 3.350(f)(3), its decision was contrary to law. Accordingly, the ease must be remanded for the Veterans’ Court to take into account the mandatory language of 38 C.F.R. § 3.350(f)(3).
 

 III. Law of the Case
 

 In the 1998 decision in which the Veterans’ Court vacated and remanded for
 
 *1339
 
 the Board to consider the effect of 38 C.F.R. § 3.350(f)(l)(i), the Court stated that:
 

 [t]here are ... definitive statements in the record indicating that supination and pronation in appellant’s elbow were totally absent, a fact which, as appellant correctly argues, constitutes unfavorable ankylosis under § 3.350(c)(1).
 

 Augustine I,
 
 1998 WL 700129, at *4. Augustine argues that the Secretary’s failure to appeal from this ruling made the determination final, and it is now the law of the case. The Secretary responds that the statement did not constitute a holding that Augustine was legally entitled to the 1}6 rate. This, the Secretary argues, is shown by a statement in the Veterans’ Court’s 2002 judgment that “it is not clear that the RO’s and the Board’s actions [in finding no clear and unmistakable error in the failure to grant the 1)6 rate based on the elbow, foot, and hand injuries alone] were, in fact, contrary [to] the Court’s October 6, 1998, memorandum decision.”
 
 Augustine II,
 
 2002 WL 1563486, at *3.
 

 Under the doctrine of law of the case, “a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation.”
 
 Suel v. Sec’y of Health & Human Servs.,
 
 192 F.3d 981, 985 (Fed.Cir.1999). The doctrine “operates to protect the settled expectations of the parties and promote orderly development of the case.”
 
 Id.
 
 at 984. A necessary predicate to application of law of the case is, therefore, that the legal issue in question has actually been decided.
 
 See United States v. United States Smelting, Ref. & Mining Co.,
 
 339 U.S. 186, 199, 70 S.Ct. 537, 94 L.Ed. 750 (1950) (“[I]t requires a final judgment to sustain the application of the rule of the law of the case.”);
 
 United States v. Turtle Mountain Band of Chippewa Indians,
 
 222 Ct.Cl. 1, 612 F.2d 517, 520 (1979) (“[0]nee a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit.” (quoting
 
 Schwartz v. NMS Indus. Inc.,
 
 575 F.2d 553, 554 (5th Cir.1978))).
 

 Here, it is apparent that the Veterans’ Court made no determination in 1998 as to Augustine’s entitlement in 1972 to the 1% rate under 38 C.F.R. § 3.350(f)(l)(i). The Court specifically stated that the Board had not addressed that question and remanded to allow the Board to do so.
 
 Augustine I,
 
 1998 WL 700129, at *4-5. Nor did the Veterans’ Court indicate in its 2002 judgment that it considered the issue to have been finally decided in 1998: the Court stated that it was “not clear” that the Board’s actions in finding no clear and unmistakable error in the 1972 rating decision were contrary to the Court’s 1998 decision.
 
 Augustine II,
 
 2002 WL 1563486, at *3. Neither did the Veterans’ Court go on to decide the question in its 2002 judgment; it based its holding on the erroneous determination that, “even if [the Court] were to assume that the RO erred in not assigning the 1/6 rate in 1972,” the Secretary could have exercised his discretion not to increase the SMC rate under 38 U.S.C. § 314(p).
 
 Id.
 
 at *4. Because the question of Augustine’s entitlement to the 1 ]6 rate under 38 C.F.R. § 3.350(f)(l)(i) has never been finally decided by the Veterans’ Court, law of the case is not applicable. Augustine’s entitlement to the 1/6 rate in 1972 under 38 C.F.R. § 3.350(f)(l)(i), as a potential basis for a holding that the 1972 rating decision was a product of clear and unmistakable error, thus remains an open question on remand.
 

 VACATED AND REMANDED COSTS.
 

 
 *1340
 
 COSTS
 

 No costs.