# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-1160

GARRY J. AUGUSTINE, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Remand from the U.S. Court of Appeals for the Federal Circuit

(Decided     November 23, 2004   )

*J. Marc Burgess* (non-attorney practitioner), of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Acting Deputy Assistant General Counsel; and *Jimmy R. Moye*, all of Washington, D.C., were on the brief for the appellee.

Before IVERS, *Chief Judge*, and GREENE and HAGEL, *Judges*.

HAGEL, *Judge*:  Before the Court is Garry J. Augustine's appeal from a March 10, 2000, Board of Veterans' Appeals (Board) decision in which the Board found no clear and unmistakable error in a February 1972 VA regional office decision in which the regional office did not award Mr. Augustine special monthly compensation at the rate specified in 38 U.S.C. § 314(m) (1972).  In a February 11, 2004, single-judge order, the Court affirmed the decision.  On March 1, 2004, Mr. Augustine filed a timely motion for a panel decision.  The Court now grants that motion and will revoke the February 11, 2004, single-judge order and issue this opinion in its place.  For the reasons that follow, the Court will affirm the March 10, 2000, Board decision.

Despite the extensive procedural history of this case, the only issue before the Court is the narrow issue of whether Mr. Augustine's loss of left-forearm supination and pronation constituted "loss of use of one extremity at a level or with complications preventing natural elbow . . . action"

as defined in 38 C.F.R. § 3.350(c)(1), (f)(1)(i) (1971), thus entitling him, in 1972, to special monthly compensation at a higher rate. Mr. Augustine argues that it does. Motion for Panel Decision at 9-11. Specifically, he asserts that under § 3.350(c)(1), "natural elbow . . . action" is deemed prevented if a veteran experiences "ankylosis," commonly defined as the "immobility and consolidation of a joint." *Id.*; DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 86 (28th ed. 1994). Next, he contends that "ankylosis" under § 3.350(c)(1) has the same meaning as "unfavorable ankylosis" under 38 C.F.R. § 4.71a, Diagnostic Code 5205 (1971). *Id.* Finally, he argues that at the time of the 1972 regional office decision he had "unfavorable ankylosis" as characterized by Diagnostic Code 5205 because he lacked supination and pronation of his left forearm even though he had movement in his left-elbow joint from 40 to 100 degrees. *Id.*

## I. FACTS

Mr. Augustine served on active duty in the U.S. Army from August 1969 to December 1971, including service in Vietnam. Record (R.) at 19. In a February 1972 decision, the regional office determined that he was entitled to special monthly compensation at the rate specified in 38 U.S.C. § 314(*l*) because he had lost the use of one of his hands and one of his feet. R. at 38. The regional office further determined that he was entitled to special monthly compensation at the next higher intermediate rate, the rate intermediate between 38 U.S.C. § 314(*l*) and (m), because he also had additional service-connected disabilities ratable at 50% or more. R. at 38. Mr. Augustine did not appeal that decision.

In February 1992, Mr. Augustine, through a representative, sent a letter to the regional office in which he argued that there was clear and unmistakable error in the February 1972 regional office decision insofar as the regional office had failed to award him special monthly compensation at the rate specified in 38 U.S.C. § 314(m) despite his loss of left-forearm supination and pronation. R. at 47-48. The regional office denied his claim. R. at 51.

After additional procedure, Mr. Augustine appealed to this Court. In an October 6, 1998, single-judge memorandum decision, the Court remanded the matter for further adjudication. Before doing so, however, the Court noted that "[t]here are . . . definitive statements in the record indicating that supination and pronation in [Mr. Augustine's] elbow were totally absent, a fact which, as [Mr.

Augustine] correctly argues, constitutes unfavorable ankylosis under § 3.350(c)(1)." *Augustine v. West*, No. 97-0505, 1998 U.S. Vet. App. LEXIS 1194, at \*11 (Oct. 6, 1998).

The Board eventually issued the March 10, 2000, decision on appeal, in which it denied Mr. Augustine's claim. R. at 16. The Board found that, at the time of the 1972 regional office decision, Mr. Augustine could not pronate or supinate his left forearm but did have "demonstrable motion of the left elbow from 40 to 100 degrees." R. at 4, 13. The Board also noted that "the available Army records document[ed] that there was no ankylosis of the left[-]elbow joint." R. at 13. The Board determined that, although Mr. Augustine "suffered the loss of supination and pronation of the left forearm," it is "undebatable that he also had a range of motion in the left elbow which could reasonably be interpreted as not showing a loss of natural elbow action." *Id.* Therefore, the Board concluded, Mr. Augustine was not entitled to special monthly compensation under 38 U.S.C. § 314(m). R. at 14.

In a July 2, 2002, single-judge memorandum decision, this Court affirmed the March 2000 Board decision. *Augustine v. Principi*, No. 00-1160, 2002 U.S. Vet. App. LEXIS 505 (July 2, 2002). The United States Court of Appeals for the Federal Circuit (Federal Circuit) subsequently vacated the July 2002 decision and remanded the matter. *Augustine v. Principi*, 343 F.3d 1334 (Fed. Cir. 2003). In its decision, the Federal Circuit rejected an argument by Mr. Augustine that the statement made by the Court in its October 6, 1998, decision, *see Augustine*, 1998 U.S. Vet. App. LEXIS 1194, at \*11, had become the law of the case. *Augustine*, 343 F.3d at 1339. In doing so, the Federal Circuit held that the law-of-the-case doctrine did not apply to the Court's statement because "the question of [Mr.] Augustine's entitlement to the [rate intermediate between 38 U.S.C. § 314(*l*) and (m)] under 38 C.F.R. § 3.350(f)(1)(i) ha[d] never been finally decided by the . . . Court." *Id.* ~~at 1339.~~

On February 11, 2004, this Court, in a single-judge order, affirmed the March 2000 Board decision. *Augustine v. Principi*, No. 00-1160, 2004 U.S. Vet. App. LEXIS 43 (Feb. 11, 2004). Mr. Augustine then filed a motion for panel decision. In that motion, Mr. Augustine concedes that "the Federal Circuit [had] rejected his law[-]of[-]the[-]case argument." Further, he reiterates the arguments that he made in his primary brief, asserting that

> [t]he controversy in the instant case . . . is whether § 3.350(f)(1)(i), if properly applied to the loss of pronation and supination in the [his] left elbow, required that [he] be awarded special monthly compensation at the [rate intermediate between

3

38 U.S.C. § 314(*l*) and (m)] as a matter of law based on VA's determination that complete loss of pronation and supination is unfavorable ankylosis of an elbow pursuant to [D]iagnostic [C]ode 5205.

Motion for Panel Decision at 8. He argues that the Court must decide "whether [his] absence of supination and pronation is the equivalent of loss of use of an arm at a level within the meaning of §§ 3.350(f)(1)(i)[,] 4.71a ([D]iagnostic [C]ode 5205)." *Id.* at 11.

In sum, Mr. Augustine now argues that his loss of supination and pronation is the equivalent of loss of use of an arm at a level within the meaning of the regulations. He further argues that he was entitled to (1) an increase, under § 3.350(f)(1)(i), of his special monthly compensation from the rate specified in 38 U.S.C. § 314(*l*) to the rate intermediate between 38 U.S.C. § 314(*l*) and (m) and (2) an additional increase, under § 3.350(f)(3), from the rate intermediate between 38 U.S.C. § 314(*l*) and (m) to the rate under 38 U.S.C. § 314(m), because of his additional service-connected disabilities ratable at 50% or more.

The Secretary, in his brief submitted prior to the Court's July 2, 2002, single-judge decision, argues that "[t]his Court has defined ankylosis as '[]immobility and consolidation of a joint due to disease, injury or surgical procedure.'" Secretary's Brief (Br.) at 8 (citing *Shipwash v. Brown*, 8 Vet.App. 218, 221 (1995)). Noting the regional office's finding that "even though there was loss of pronation and supination, there was still limited movement in the joint," the Secretary asserts that "there is no evidence of record at the time [of the 1972 decision] that [Mr. Augustine's] left elbow met the definition of ankylosis." *Id.* at 9-10 (citing R. at 37). Accordingly, the Secretary contends, Mr. Augustine was not entitled to special monthly compensation at a higher rate. *Id.*

## II. ANALYSIS

A prior final regional office decision must be reversed or revised where evidence establishes clear and unmistakable error. *See* 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (2003). Because an allegation of clear and unmistakable error represents a collateral attack on a decision that has become final, an appellant who alleges clear and unmistakable error in such a decision "bears an extra-heavy burden" of persuasion. *Berger v. Brown*, 10 Vet.App. 166, 169 (1997). Clear and unmistakable error is established when the following conditions are met. First, either (1) the correct facts in, or

constructively in, the record were not before the adjudicator or (2) the statutory or regulatory provisions extant at the time were incorrectly applied. *See Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Second, the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc). Finally, the alleged error "must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made." *Id.*; *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language in *Russell*, 3 Vet.App. at 313-14). When the Court reviews a Board determination that there was no clear and unmistakable error in a prior final regional office decision, the Court's review is limited to determining whether the Board's conclusion in that regard is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(a)(3)(A), and whether it is supported by an adequate statement of "reasons or bases," 38 U.S.C. § 7104(d)(1). *See Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

To receive the rate of special monthly compensation provided for by § 3.350(f)(1)(i), the rate intermediate between 38 U.S.C. § 314(*l*) and (m), a veteran must experience the "[a]natomical loss or loss of use of one extremity at a level or with complications preventing natural elbow . . . action." While § 3.350(c)(1) does not explicitly define the phrase "natural elbow . . . action," that regulation does provide some guidance by explaining that

> [i]n determining whether there is natural elbow or knee action with prosthesis in place, consideration will be based on whether use of the proper prosthetic appliance requires natural use of the joint, or whether necessary motion is otherwise controlled, so that the muscles affecting the joint motion, *if not already atrophied, will become so.* If there is no movement in the joint, as in *ankylosis* or complete paralysis, use of prosthesis is not to be expected, and the determination will be as though there were one in place.

38 C.F.R. § 3.350(c)(1) (emphasis added). The key determination of whether there is "natural elbow . . . action," therefore, is whether the muscles used to move the elbow joint are atrophied or are projected to become so. One can divine from the language of the regulation that if the muscles used to move the elbow joint are atrophied or will become so, then there is no "natural elbow . . . action."

In this case, at the time of the 1972 regional office decision, Mr. Augustine had not suffered the anatomical loss of his left arm; therefore, he must show that at that time he experienced the loss

of use of his left arm at a level or with complications preventing "natural elbow . . . action." 38 C.F.R. § 3.350(c)(1), (f)(1)(i). In his attempt to make such a showing, however, Mr. Augustine has failed to point to any evidence before the regional office in 1972 that reflected that the muscles used to move his elbow joint were atrophied or would become atrophied. Accordingly, he cannot demonstrate that he lacked "natural elbow . . . action" at that time. *Id.* Considering that the evidence that Mr. Augustine needed to produce in order to prevail on his claim was not before the regional office in 1972, no error committed by the regional office could constitute clear and unmistakable error because, without that evidence, the outcome of its decision–a denial of his claim–would have been the same even if the regional office had not committed any such error. *See Russell*, 3 Vet.App. at 313-14; *see also Bustos*, 179 F.3d at 1380. Accordingly, the March 2000 Board decision was not arbitrary and capricious insofar as the Board determined that the 1972 regional office decision was not the product of clear and unmistakable error because "it is undebatable that [Mr. Augustine] also had a range of motion in the left elbow which could reasonably be interpreted as not showing a loss of natural elbow action." R. at 13.

Mr. Augustine disagrees and in doing so advances a chain of assumptions that leads to his conclusion that the 1972 regional office erred by failing to determine that his loss of supination and pronation of his forearm, even with movement in his elbow joint from 40 to 100 degrees, constituted, via Diagnostic Code 5205, the loss of "natural elbow . . . action" under § 3.350(c)(1). Motion for Panel Decision at 11. Diagnostic Code 5205, on which Mr. Augustine relies, enumerates, for rating purposes, the following categories of ankylosis of the elbow:

> Unfavorable, at an angle of less than 50 [degrees] or with complete loss of supination or pronation.
> Intermediate, at an angle of more than 90 [degrees], or between 70 [degrees] and 50 [degrees].
> Favorable, at an angle between 90 [degrees] and 70 [degrees].

38 C.F.R. § 4.71(a), Diagnostic Code 5205.

The first link in Mr. Augustine's chain of assumptions is that loss of supination and pronation alone, even with movement in the elbow joint, can constitute "unfavorable ankylosis" under Diagnostic Code 5205. His next link is that in the sentence in § 3.350(c)(1) beginning with "[i]f there is no movement in the joint, as in ankylosis or complete paralysis," the term "ankylosis" must

have the same meaning as the phrase "unfavorable ankylosis," which Mr. Augustine contends can be manifested by loss of supination and pronation alone even if there is movement in the elbow joint. The final link is that loss of supination and pronation even with movement in the joint–"unfavorable ankylosis" under Mr. Augustine's interpretation–constitutes a lack of "natural elbow . . . action" as defined in § 3.350(c)(1).

Mr. Augustine's chain of assumptions cannot withstand scrutiny. Even assuming that his first two assumptions are correct, a determination that this Court does not make, his final assumption fails insofar as it completely ignores the fact that the determination, under § 3.350(c)(1), of whether a veteran has "natural elbow . . . action" is defined in terms of muscle atrophy and prospective muscle atrophy. Moreover, he fails to acknowledge that that determination is based on evidence, or the lack of evidence, regarding muscle atrophy or prospective muscle atrophy even when a veteran has no movement in the joint, as in a veteran who experiences ankylosis or paralysis. 38 C.F.R. § 3.350(c)(1).

In conclusion, Mr. Augustine has failed to demonstrate that the Board's determination that there was no clear and unmistakable error in the February 1972 regional office decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *see Russell*, 3 Vet.App. at 315. The Court further concludes that the Board's determination in that regard was supported by an adequate "statement of reasons or bases." 38 U.S.C. § 7104(d)(1); *see Eddy*, 9 Vet.App. at 57.

### III.  CONCLUSION

On consideration of the foregoing, the Court's February 11, 2004, order is REVOKED, and the March 10, 2000, Board decision is AFFIRMED.

7