# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS
**No. 06-559V**
**Filed: March 1, 2013**
**To be Published**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| GABRIEL G. RODRIGUEZ, <br> as administrator of the estate of, <br> Giavanna Maria Rodriguez, for the benefit of <br> Gabriel Gene Rodriguez and <br> Jennifer Ann Rodriguez <br><br>          Petitioner, <br>    v. <br><br> SECRETARY OF HEALTH <br> AND HUMAN SERVICES, <br><br>         Respondent. | Attorneys' Fees and Costs; "Fees for Fees"; Law of the Case Doctrine; Federal Circuit Rule 47.7; Motions for Review of Fees and Costs Decisions |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

John F. McHugh, Esq., Law Office of John McHugh, New York, NY, for petitioner.
Darryl R. Wishard, Esq., U.S. Dept. of Justice, Washington, DC, for respondent.

## DECISION ON  FEES AND COSTS[1]

**Vowell**, Special Master:

This fees and costs application ["Fee App."]has a convoluted procedural history, stretching from the initial fees application before me in 2008, to a request for review by the Supreme Court of the United States ["Supreme Court"] in 2011, followed by a return to this court in 2012.  If any case better illustrates the quagmire that "fees for fees"[2] litigation has become in the Vaccine Program, I have not found it.

---

[1] Because this published decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] "Fees for fees" is a term commonly employed in the Vaccine Program to refer to fees awarded for work on the initial fees application, as well as any challenge to or appellate litigation of the initial fees application filed before the special master.  "Fees for fees" thus encompasses fees for preparation of an application for attorneys' fees and costs, a reply brief filed after respondent formally opposes a fees and costs application, and the fees and costs associated with a successful or unsuccessful motion for review

I am not optimistic that this decision will end the litigation over attorneys' fees and costs in this case. Rather, it is likely to trigger yet another *Jarndyce v. Jarndyce*-esque[3] round of filings and motions. This litigation is unlikely to consume the trust fund that pays attorneys' fees and costs awards, but it has certainly consumed considerable time and effort. Fees for fees litigation has been—at least until the Federal Circuit's summary denial of a portion of the fees requested in this case—fueled in part by the lack of any financial disincentive for repetitive appeals of decisions denying any portion of any fees and costs application.

In this decision, I deny the portion of petitioner's fees application[4] that was considered and rejected by the Federal Circuit. With regard to this portion of the instant fees application, I question whether any attorney outside the Vaccine Program, which has routinely paid attorneys for unsuccessful appeals of adverse fees decisions, would seriously consider making the arguments that petitioner's counsel makes before me. In effect, he asks me to overrule the Federal Circuit panel that considered and denied these fees in the first instance. For the reasons stated below, I decline the opportunity.

The remaining portion of this fees application consists of a request for fees and costs for work that was not part of petitioner's Federal Circuit motion. This work involved the motion for review of my initial fees and costs decision. Based on both precedent and policy, I grant in part and deny in part petitioner's request for fees for his 2009 motion for review.

## I. Procedural History.

A. The Entitlement Case.

On July 31, 2006, petitioners Gabriel and Jennifer Rodriguez,[5] filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §

---

of a special master's fees and costs decision. A motion for review before a judge of the Court of Federal Claims may include oral argument as well as briefs on the issues raised. "Fees for fees" may also include an appeal, successful or otherwise, to the United States Court of Appeals for the Federal Circuit ["Federal Circuit"] of a denial of or reduction to fees. In this case, it also includes fees for filing a petition for certiorari before the Supreme Court and for coordinating the filing of amicus pleadings on that petition.

[3] This fictional case from Charles Dickens' novel BLEAK HOUSE depicts the systemic flaws in the nineteenth century Chancery Court in Great Britain. In the novel, the cost of litigation over a will consumes the estate at issue.

[4] The convention in the Vaccine Program is to refer to requests for fees and costs as petitioner's requests or applications, even though the vast majority of these requests primarily involve their attorneys' fees and only modest amounts of the costs awards go directly to petitioners themselves. The Vaccine Act's § 15 has been interpreted as requiring the payment to be made to petitioner, even though the attorney is legally entitled to the funds, and the attorneys are the real parties in interest in most fees and costs applications. *See Heston v. Sec'y, HHS,* 41 Fed. Cl. 41 (1998); *Newby v. Sec'y, HHS,* 41 Fed. Cl. 392 (1998).

[5] Pursuant to my order of September 14, 2007, Gabriel Rodriguez secured appointment as the administrator of his daughter's estate. The case was subsequently recaptioned to reflect a claim on

2

300aa-10, *et seq.*[6] [the "Vaccine Act" or "Program"], based on the death of their daughter, Giavanna Maria Rodriguez. Unlike the fees and costs phase, the entitlement case was resolved expeditiously. In November 2007, after an entitlement hearing, I approved a stipulated settlement in this case, and awarded petitioner the agreed-upon compensation.[7]

## B. Fees and Costs before the Special Master.

Because petitioner was compensated for a vaccine injury, he was also entitled to an award of reasonable fees and costs.[8] § 15(e)(1). Petitioner filed his application for attorneys' fees and costs on February 25, 2008 seeking $450.00 per hour for his attorney, Mr. John McHugh. However, on April 3, 2008, he filed an amended application seeking the so-called "Laffey Matrix"[9] hourly rates of $598-$645.00 per hour. After extensive briefing by both parties, I issued a decision on July 27, 2009, awarding $59,647.71 in fees and costs to petitioner, $57,395.55 of which represented compensation for his counsel's time and costs.[10] *Rodriguez v. Sec'y, HHS,* No. 06-559V, 2009 WL 2568468 at *24 (Fed. Cl. Spec. Mstr. July 27, 2009). The hourly rates I awarded ($310 to $335 for Mr. McHugh and $270 to $275 for Mr. Gaynor) represented my calculation of the forum rates for 2006 through 2009. The $156,792.92 in attorneys' fees and costs petitioner seeks in his current fee application is for work conducted and expenses generated after my fee decision was issued.

## C. Motion for Review of the Fees and Costs Award.

Because I did not award Laffey Matrix rates and concluded that Mr. McHugh, petitioner's counsel of record, and Mr. Gaynor, the associate counsel who worked on the fees and costs application, were instead entitled to the forum rate, petitioner filed a

---

behalf of the estate. Order, filed Oct. 5, 2007. I will therefore refer to Gabriel Rodriguez as "petitioner" throughout the remainder of this opinion.

[6] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

[7] After the entitlement hearing, I ordered respondent to show cause why I should not find that Giavanna's death constituted a Vaccine Table injury, for which causation is presumed. Order, filed Sept. 14, 2007. Subsequently, the parties settled the case.

[8] Whether winning the entitlement case also entitles petitioner to fees for fees for an unsuccessful but non-frivolous motion for review is an issue addressed below.

[9] The applicability of the Laffey Matrix, a method for calculating attorneys' fees for prevailing parties in the U.S. District Court for the District of Columbia based on *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D. DC 1983), was the primary issue in petitioner's motion for review and subsequent appellate litigation in this case.

[10] This included fees for Mr. Gilbert Gaynor, an attorney who worked on the additional briefing I ordered regarding the Laffey Matrix rates request.

motion for review of my decision with the Court of Federal Claims on August 26, 2009. After briefing and oral argument, Judge Sweeney of the Court of Federal Claims denied the petition for review on January 22, 2010. *Rodriguez v. Sec'y, HHS,* 91 Fed. Cl. 453 (2010).

D.  Subsequent Review.

Petitioner appealed to the Federal Circuit.  More briefing and oral argument ensued, and, once again, petitioner's request for Laffey Matrix hourly rates was unsuccessful. *Rodriguez v. Sec'y, HHS,* 632 F.3d 1381 (Fed. Cir. 2011).  Petitioner's request for a rehearing en banc was denied on April 18, 2011. *Id.* Petitioner filed an application for a writ of certiorari with the Supreme Court on July 27, 2011.  That application was denied on November 28, 2011. *Rodriguez v. Sebelius*, 132 S. Ct. 758 (2011).

E.  Fees for Fees at the Federal Circuit.

On December 24, 2011, petitioner filed a motion for attorneys' fees and costs with the Federal Circuit ["Fed. Cir. Fee Motion"] pursuant to Rule of the Federal Circuit ["RFC"] 47.7.  In this motion, petitioner requested attorneys' fees and costs for his Federal Circuit appeal of Judge Sweeney's decision denying Laffey Matrix rates, the request for an en banc hearing, and the filing of his certiorari petition.  Petitioner did not request payment for any work or expenses associated with the motion for review filed in the Court of Federal Claims.

Petitioner's tactical reason for filing first with the Federal Circuit is clear from his motion.  He wanted the court to consider whether "the hourly rates for attorneys that have been held appropriate in procedurally simplified Vaccine Act proceedings before the special masters of the Court of Federal Claims [are] also appropriate for appellate litigation before the Supreme Court and this Court." Fed. Cir. Fee Motion, filed as Respondent's Exhibit ["Res. Ex."] I, at 2.  If he obtained a higher hourly rate before the Federal Circuit, he could argue that the higher rate should also apply to his work on the motion for review before the Court of Federal Claims.

Before the Federal Circuit, respondent argued that the motion should be remanded to the Court of Federal Claims, asserting that such fees requests should be filed there in the first instance.  In the alternative, respondent argued that if the Federal Circuit elected to rule on the fees motion, no fees should be awarded because petitioner had been unsuccessful in his appeal before the Federal Circuit, making the fees for fees request unreasonable under § 15(e)(1).  Respondent also asserted that the requested hourly rates and number of hours billed were unreasonable and excessive. Respondent's Response to Fee App. at 3; *see also* Respondent's Response to Fed. Cir. Fee Motion, filed as Res. Ex. J and as Ex. D to Gaynor's Declaration, filed with the Fee App.

On February 17, 2012, the Federal Circuit denied petitioner's request, without weighing in on the question posed by petitioner. The per curiam order states in its entirety:

Petitioner Gabriel Rodriguez seeks an award of attorney's fees following his unsuccessful appeal challenging the method of calculation and amount of attorney's fees he was awarded under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§300aa-1 to -43 ("Vaccine Act"), as amended. The motion for an award of attorney's fees for his unsuccessful appeal is denied.

*Rodriguez v. Sec'y, HHS*, No. 2010-5093 (Fed. Cir. Feb. 17, 2012) (per curiam order denying motion for attorneys' fees and costs) ["Fed. Cir. Fee Order"].

F. The Instant Application for Fees and Costs.

On March 12, 2012, petitioner filed the instant application,[11] seeking not only an award of $28,883.00 in attorneys' fees for the motion for review before the Court of Federal Claims, but also an award for the fees for fees litigation before the Federal Circuit and the Supreme Court. Respondent opposed petitioner's request in a March 20, 2012 filing.[12] Petitioner filed a reply brief on March 26, 2012.[13]

I held a status conference to discuss the application on April 18, 2012, during which I referenced *Cloer v. Sec'y, HHS,* 675 F.3d 1358 (Fed. Cir. 2012) ["*Cloer II*"] as bearing on part of petitioner's argument. On April 24, 2012, petitioner requested leave of the court to file a supplemental memorandum addressing the impact of *Cloer II* on his fee application. The memorandum ["Pet. Memo"] also included a request for $2,686.00 in additional fees.[14] I granted petitioner's motion for leave on April 27, 2012, and respondent filed a response to petitioner's supplemental memorandum ["Res. Memo"] on April 30, 2012. The matter is now briefed and ripe for decision.

---

[11] Petitioner attached several documents to his application: Declaration of Gilbert Gaynor with supporting exhibits, Declaration of John F. McHugh with supporting exhibits, Declaration of Michael T. Kirkpatrick, and Declaration of Deborah Drooz.

[12] Respondent included three exhibits with her response: Exhibit I (Fed. Cir. Fee Motion), Exhibit J (Respondent's Response to the Fed. Cir. Fee Motion), and Exhibit K (Fed. Cir. Fee Order).

[13] Petitioner attached three exhibits to his reply brief containing pleadings filed with the Federal Circuit in *Masias v. Sec'y, HHS*, No. 2010-5077: Exhibit 1 (Motion to Withdraw Application for Award of Appellate Attorneys' Fees and Costs), Exhibit 2 (Respondent's Response in Opposition to Petitioner's Motion to Withdraw Application for Award of Appellate Attorney's Fees and Costs), and Exhibit 3 (Order granting Motion to Withdraw).

[14] Attached to this memorandum was a supplemental declaration of Mr. Gaynor. I will refer to the declaration filed with the instant fee application as "Gaynor's First Declaration" and the one filed with the memorandum as "Gaynor's Second Declaration."

## II. Analysis of Legal Issues Presented.

The instant application for fees and costs requires me to determine the effect of the Federal Circuit's denial of petitioner's fees motion on both his renewed application for those same fees [hereinafter "Fed. Cir. fees"] and on his initial fees application for his Court of Federal Claims motion for review [hereinafter "CFC fees"]. Petitioner's request that I award fees and costs for work for which compensation was denied by the Federal Circuit raises issues that are novel in the context of fees and costs applications before special masters.

For the reasons set forth below, I conclude that I am without authority to award fees and costs for the appellate work before the Federal Circuit or the Supreme Court. However, I conclude that petitioner is entitled to an award of fees for the work performed during petitioner's motion for review by the Court of Federal Claims, albeit in an amount smaller than requested.

### A. Fees for Appellate Work in the Federal Circuit and Supreme Court.

The parties' disagreement on the effect of the Federal Circuit's denial of petitioner's fee motion in this case raises issues related to preclusion, law of the case, and the impact of two recent Federal Circuit decisions on the award of fees and costs. *See* Fee App. at 4-6; Response at 5-8.

#### 1. Claim Preclusion and Issue Preclusion.

Petitioner argues that neither the doctrine of claim preclusion nor the related doctrine of issue preclusion affects his request for fees for fees. Fee App. at 6. In essence, he claims that the Federal Circuit's February 17, 2012 order has no impact on my authority to award payment for his Federal Circuit appeal and petition for certiorari.

Claim preclusion or res judicata bars a second suit between the same parties based on the same cause of action as the first suit if there was a judgment on the merits in the prior suit. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Issue preclusion or collateral estoppel prevents parties in a second suit involving a different cause of action from re-litigating issues presented and decided in a prior suit. *Id.*

Petitioner argues that the Federal Circuit's failure to state why his request was denied means that the order was not a "final judgment" and does not invoke either preclusion doctrine.[15] Petitioner may be correct in his assertion that neither claim

---

[15] Petitioner agrees that claim preclusion bars a second suit if "there has been an earlier final judgment on the merits of a claim." Fee App. at 6 (quoting *Jet, Inc., v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000) citing *Parklane*, 439 U.S. at 326). However, petitioner claims that the Federal Circuit's failure to explicitly state a basis for its action on his fees and costs request means that it is not a final judgment. Thus, petitioner contends that the doctrine of claim preclusion does not bar me from awarding fees and costs for the same work. Because respondent opposed the Fed. Cir. Fee Motion on several grounds, and because the order does not indicate which, if any, of respondent's arguments the Federal

6

preclusion nor issue preclusion prevents me from awarding him the fees initially sought in his Fed. Cir. Fee Motion, albeit for different reasons than he articulates.[16] Because the law of the case doctrine requires denial of these fees, a thorough analysis of whether claim or issue preclusion affects this application is unnecessary.[17]

> 2. Application of Law of the Case Doctrine.

The law of the case doctrine is a judicially created doctrine that "promotes the finality and efficiency of the judicial process by protecting against the litigation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). It covers issues decided explicitly and those that are necessarily inferred from the disposition. *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,* 761 F.2d 649, 657 (Fed. Cir. 1985). The doctrine is based on the principle that "a litigant given one good bite at the apple should not have a second." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 890 (Fed. Cir. 1984).

Under the law of the case doctrine, courts generally refuse to reconsider an issue decided at an earlier stage of the litigation. *Suel v. Sec'y, HHS,* 192 F.3d 981, 984 (Fed. Cir. 1999). However, if a trial judge determines that exceptional circumstances are present, specifically if "the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice" then the judge may opt against applying the doctrine and elect not to enforce the prior rulings of an appellate court. *Smith Int'l, Inc., v. Hughes Tool Co.,* 759 F.2d 1572, 1576 (Fed. Cir. 1985); *see also Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001); *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006); *Outside the Box Innovations, LLC, v. Travel Caddy, Inc.,* 695 F.3d 1285, 1302 (Fed. Cir. 2012).

Respondent maintains that the Federal Circuit's order bars petitioner from seeking in this court the same fees and expenses he previously sought in the Fed. Cir. Fee Motion. Although the Circuit's denial order does not directly address the arguments raised in respondent's opposition, respondent contends that the Federal Circuit implicitly addressed them and the law of the case doctrine should apply. Response at 6.

---

Circuit found persuasive, petitioner argues that the order cannot be viewed as a judgment on the merits. Fee App. at 6. *Jet* listed four factors necessary to establish issue preclusion. One factor is established by a showing that "the determination of the issues was necessary to the resulting judgment." *Jet*, 223 F.3d at 1366. Because the Federal Circuit's order does not explain why the request for fees was denied, petitioner contends that this factor is not satisfied. Fee App. at 6. Petitioner dismisses the possibility that the court denied fees because of the unsuccessful nature of his appeal, by noting that the Vaccine Act's fee provision is not a prevailing party statute. Additionally, petitioner states that an absolute "no fees for fees" position would be a drastic change in the law, and would thus warrant a longer opinion. Fee App. at 6.

[16] Both doctrines apply to a second suit filed by a party, and here there is only one underlying suit.

[17] Respondent did not dwell upon either claim or issue preclusion in her response brief, arguing instead that neither principle "circumvent[s] the application of the law of the case doctrine." Response at 7.

7

In his reply brief, petitioner argues that the law of the case doctrine is not applicable to his fee application.  Reply at 2-7.  Petitioner asserts that an unexplained decision cannot establish a rule of law, and that even if the denial order in this case had been published it could not be cited as authority for any legal rule and thus is not subject to the law of the case doctrine.  *Id.* at 2.

Petitioner is mistaken.  Non-precedential orders of the Federal Circuit may be relied upon for guidance or persuasive reasoning by courts and parties may cite to non-precedential dispositions when asserting law of the case.  RFC 32.1(c) and (d); *see also* Federal Circuit Internal Operating Procedure No. 9 (stating that non-precedential orders "shall not be employed as binding precedent except in relation to a claim of res judicata, collateral estoppel, or law of the case").[18]

Petitioner's reply brief also refers to the statement in *Augustine v. Principi* that "[a] necessary predicate to application of law of the case, is, therefore, that the legal issue in question has actually been decided."  *Augustine v. Principi*, 343 F.3d 1334, 1339 (Fed. Cir. 2003).  Petitioner again argues that, as the per curiam order did not directly address respondent's objections to the Fed. Cir. Fee Motion, the order cannot be viewed as having determined the legal issue in question.  Reply at 2-3.

In *Augustine*, the Federal Circuit held that the issue of whether Augustine was entitled to a higher rate of special monetary compensation ["SMC"] had never been "finally decided," and thus language from a prior decision could not be considered the law of the case.  *Augustine*, 343 F.3d at 1339.  Augustine was trying to use language from a 1998 United States Court of Appeals for Veterans Claims remand decision as proof that he had demonstrated a particular level of injury to his elbow, warranting a higher SMC rate.  *Id.*  The Federal Circuit held that the remand decision, which included instructions for the Board of Veterans' Affairs to use in making a decision regarding the appropriate SMC rate, indicated that the Court of Appeals for Veterans Claims had not decided the legal issue in question. Therefore, the language Augustine was attempting to rely upon did not constitute the law of the case.  *Id.*  Petitioner's case is distinguishable from *Augustine*.  The Federal Circuit considered petitioner's request for fees and costs, but it did not remand it to a lower court for a decision as respondent requested.  Instead, the Circuit unmistakably denied petitioner's request.

As respondent notes, in issuing the denial order the Federal Circuit implicitly rejected her argument that petitioner must first file for fees with the special master, as well as her suggestion to remand to the U.S. Court of Federal Claims.  Because the Federal Circuit did not remand, it must have determined that the Circuit was an appropriate forum in which to seek fees.[19]  Because the Circuit also denied the

---

[18] The Federal Circuit's Internal Operating Procedures are publically available on the court's website, http://www.cafc.uscourts.gov/images/stories/rules-of-practice/IOPsMaster.pdf (last visited Feb. 28, 2013).

[19] Petitioner notes in his reply brief that respondent did not cite any authority which would authorize remand of the fee motion.  Petitioner contends that RFC 47.7 has no remand provision and that the rule presumes the Federal Circuit will either grant or deny a party's fee motion and then, in the event a party's fee motion is denied, permit the party requesting fees to decide whether to seek fees elsewhere.  Reply at

application for fees, the court necessarily decided that petitioner was not entitled to additional fees in this case.  Response at 7.

Petitioner also argues that it is unlikely the Federal Circuit would have adopted respondent's argument that fees for fees are unavailable for unsuccessful appeals of fee decisions because doing so would be a significant departure from the existing case law[20] and one warranting a longer, more in-depth order.  Reply at 5.  Petitioner seems to ignore the possibility that the Federal Circuit's order does not represent a new precedent concerning fees for fees and instead simply reflects the Court's analysis of the request for appellate fees in this particular case.  As the Federal Circuit's Internal Operating Procedure No. 10 notes, non-precedential orders "should not unnecessarily state the facts or tell the parties what they argued or what they otherwise already know. It is sufficient to tell the losing party why its arguments were not persuasive."

### 3.  Relevance of *Masias v. Sec'y, HHS.*

Petitioner also relies upon the Federal Circuit's action in *Masias v. Sec'y, HHS*,[21] another Vaccine Act case, to support his position that the Fed. Cir. Fee Order does not bar me from awarding him the Federal Circuit fees.  Like Mr. Rodriguez, the petitioner in *Masias* first filed a motion for fees and costs with the Federal Circuit for his unsuccessful appeal of the special master's decision on fees and costs to the Federal Circuit.  When the Circuit denied Mr. Rodriguez's fee motion, the petitioner in *Masias* moved to withdraw his application.  Masias Motion to Withdraw, filed as Reply Exhibit 1. Respondent opposed the motion to withdraw on the grounds of judicial economy, as the matter was fully briefed before the Federal Circuit, but the court permitted the withdrawal.  Respondent's Response to Masias Motion to Withdraw, filed as Reply Exhibit 2; Order Granting Motion to Withdraw, filed as Reply Exhibit 3.  Mr. Masias

---

3.  Petitioner cites no authority for this strained interpretation of RFC 47.7.  This rule "merely defines procedures for requesting attorney fees  from [the Federal Circuit]; it does not, and cannot, confer upon the Federal Circuit the exclusive jurisdiction to award such fees or restrict district court authority under federal or state law."  *Concept Design Elec. and Mfg., Inc., v. Duplitronics, Inc.*, 79 F.3d 1167 at *1 (Fed. Cir. 1996) (unpublished table decision).  However, in a decision issued after the reply brief was filed, the Federal Circuit implicitly ruled that it had authority to remand a fees application.  See *Cloer II*, 675 F.3d at 1364 (remanding a fees application to the Court of Federal Claims to determine if the petition was reasonably filed).  Section II.A.4 below discusses *Cloer II* in more detail.

[20] In particular, petitioner cites to *Morse v. Sec'y, HHS,* 93 Fed. Cl. 780 (2010) and *Friedman v. Sec'y, HHS,* which he cited as No. 02-1467V, 2010 WL 4340986 (Fed. Cl. Oct. 6, 2010).  I note that *Friedman* was a decision of a special master, not a judge of the Court of Federal Claims.  However, neither decision constitutes "binding precedent" that a decision on fees for fees could not consider the merits of the fees appeal in determining whether to award additional fees for that appeal.  See *Hanlon v. Sec'y, HHS*, 40 Fed. Cl. 625, 630 (1998) (noting that decisions issued by special masters and judges of the Court of Federal Claims constitute persuasive, but not binding authority).

[21] *Masias v. Sec'y, HHS*, is case number 99-697V in the Court of Federal Claims, and 2010-5077 in the Federal Circuit.

9

subsequently filed a fees application before the special master, who elected to award none of the requested fees. *Masias v. Sec'y, HHS,* No. 99-697V, 2012 WL 2581403 (Fed. Cl. Spec. Mstr. June 7, 2012). His decision was reversed and remanded by Judge Hodges of the Court of Federal Claims. *Masias v. Sec'y, HHS,* 106 Fed. Cl. 700 (2012). A decision awarding some of the requested fees was issued on January 31, 2013. *Masias v. Sec'y, HHS,* No. 99-697V, 2013 WL 658439 (Fed. Cl. Spec. Mstr. Jan. 31, 2013).

Petitioner argues that the granting of the motion to withdraw in *Masias* illustrates that the Federal Circuit has rejected respondent's depiction of the denial order as a decision on the merits. Reply at 6-7. This is a very strained interpretation of the Circuit's action. I read the Federal Circuit's order in *Masias* as simply reflecting the shared jurisdiction over fees and costs applications that exists in Vaccine Act cases. Petitioners may elect to file for appellate fees in the first instance in the Court of Federal Claims or in the Federal Circuit. Mr. Rodriguez elected to file in the Federal Circuit. The petitioner in *Masias* initially made the same election and then reconsidered his choice of forum.

The basis for petitioner's arguments about the *Masias* order's impact on the instant case eludes me. The issue is not whether petitioner could have requested that the Court of Federal Claims decide his appellate fees request in the first instance. Clearly Mr. Rodriguez could have filed his fee application in either court. The issue here is whether I can grant a request for the same fees that the Federal Circuit has already denied. Although the denial order does not make reference to the arguments of the parties,[22] it is a denial of the very fees and costs that Mr. Rodriguez now requests that I grant. Seeking to withdraw an application in order to file it elsewhere does not implicate the law of the case doctrine. Asking a lower court to grant the same fees and costs that a higher court has denied does implicate that doctrine. *See Masias,* 106 Fed. Cl. at 703 n.3 (suggesting that the Federal Circuit's Fee Order would be "persuasive precedent" in a subsequent fees application in the same case, but not in the subsequent fees application by Mr. Masias).

    4. Impact of *Cloer II.*

Petitioner's supplemental briefing concerning the impact of or guidance to be taken from *Cloer II* is contradictory and internally inconsistent.[23] Initially, petitioner correctly notes that "good faith and reasonable basis do not apply in determining eligibility for fees" in a case where petitioner prevailed in the underlying Vaccine Act claim. Pet. Memo at 3-4. However, petitioner closes his supplemental memorandum by arguing that:

---

[22] I note, however, that in a one paragraph order, petitioner's appeal is twice termed "unsuccessful," suggesting that petitioner's lack of success played some role in the Federal Circuit's denial of the fee motion.

[23] In his memorandum, petitioner refers to the decision as *Cloer.* For consistency within this decision, I will modify petitioner's references from "*Cloer*" to "*Cloer II.*" The issue in *Cloer I* involved the Vaccine Act's statute of limitations. *See Cloer v. Sec'y, HHS,* 654 F.3d 1322 (Fed. Cir. 2011).

[t]he *express*, precedentially-binding analysis of the *Cloer [II]* court spells out *exactly* what is required to determine eligibility for fees – 'a good faith and reasonable basis analysis'– and it is clear from the face of the Circuit's two-sentence February 17 order, which says nothing about reasonableness or good faith, that it simply does not comprise such analysis.

Pet. Memo at 7-8 (emphasis in original). Petitioner argues that because good faith and reasonable basis were not analyzed in the denial order it was not a decision on the merits.[24] *Id.* at 7. The petitioner in *Cloer* was not compensated for the underlying vaccine injury claim. Thus, any award of fees and costs to Dr. Cloer would require an analysis of the good faith and reasonable basis of the underlying claim, with *Cloer II* making the lack of timely filing part of that good faith and reasonable basis analysis.

In contrast, Mr. Rodriguez received compensation on his underlying claim, making him entitled to an award of reasonable fees and costs. The denial order's lack of a good faith and reasonable basis analysis does not spare petitioner from an application of the law of the case doctrine, as under § 15(e) such analysis is not required when determining the reasonable attorneys' fees to which a <u>compensated</u> petitioner is entitled.

Petitioner also asserts that the failure of the Federal Circuit to remand his motion for fees to the CFC does not necessarily "signal that [the denial order] was determining the issue on the merits" because "[w]hile *Cloer* [*II*] shows a remand may be proper, nothing in *Cloer* [*II*] shows it is mandatory." Pet. Memo at 6-7. Petitioner additionally notes that *Cloer II* was issued two months after the panel ruled on his fee motion, and opines that it cannot be assumed that the panel members in this case knew that remanding the fee motion was a proper action to take. *Id.* at 6. However, I note that the issue of remand was squarely before the panel in this case, as respondent had suggested remand was appropriate.

Respondent interprets *Cloer II* as illustrating that "the propriety of a remand of a case by an appellate court to a lower court obviously depends on the facts and circumstances in the particular case." Res. Memo at 2. The Federal Circuit's Internal Operating Procedure No. 9 embodies respondent's view of *Cloer II*, noting that "[t]he court will remand only <u>when there is something more for the trial court or agency to do</u>, and will supply such guidance as the case may warrant" (emphasis added). In *Cloer II*, the Federal Circuit opted to provide guidance on how to evaluate a fee petition in an untimely filed case and remanded the case to the Court of Federal Claims to determine the appropriate award of fees under the articulated legal framework.[25] In this case, the

---

[24] Although petitioner devotes two pages of his memorandum to present an argument in the alternative regarding unsuccessful appeals (*id.* at 4-5), it does not appear that the closing section of the memorandum is intended to be an argument in the alternative.

[25] On November 20, 2012, the Supreme Court granted the Secretary's petition for certiorari in *Cloer II* on the issue of whether the Vaccine Act's statute of limitations precludes the payment of attorneys' fees and costs in untimely-filed cases. *Cloer v. Sec'y, HHS*, 675 F.3d 1358 (Fed. Cir. 2012), *cert. granted*, 2012

Federal Circuit elected to make a determination on the appropriate award of fees and decided that an award of fees was not appropriate.

    5.  Conclusion.

    Petitioner argues that application of the law of the case is discretionary and applying it here would lead to a "highly inequitable result."  Reply at 7.  Petitioner does not cite to any case law to support this argument, but I will assume he is referring to the third "exceptional circumstance" articulated in *Smith* and other cases.  This exception requires that application of the doctrine would "work a manifest injustice" <u>and</u> that the initial decision "was clearly erroneous."  *Smith*, 759 F.2d at 1576.  I am without authority to find the Federal Circuit's denial to be clearly erroneous, and thus need not reach the "manifest justice" argument.

    Under the law of the case doctrine I am bound by the decision reached by the Federal Circuit.  Therefore, I deny petitioner's application for the fees requested from and denied by the Federal Circuit.

B.  Fees for Appellate Work in Court of Federal Claims.

    The initial question presented in considering petitioner's request for fees and costs for work before the Court of Federal Claims is whether the Federal Circuit's summary denial of petitioner's request for fees for fees prohibits me from making an award for work on the motion for review.  I conclude that the "law of the case" doctrine is not directly implicated, and thus I have the discretion to award fees for this appeal.  I exercise that discretion in favor of an award.  However, I grant fees in an amount less than petitioner requests because I find that the hourly rate requested exceeds the forum rate and that some of the hours represent work for which petitioner's counsel have already received payment.

    1.  Law of the Case.

    In her discussion of the applicability of law of the case to the instant fee application, respondent notes that the issues raised in the appeals to the Federal Circuit and Supreme Court were the same issues raised in the motion for review, and argues that the instant fee application should be denied *in toto*.  Response at 9 n.5.  The Federal Circuit's summary denial of petitioner's request, coupled with the use of the term "unsuccessful" twice in a one paragraph order, could be viewed as an indication that the Federal Circuit did not think this unsuccessful appeal warranted any additional fees for fees.  Having gambled by asking the Circuit to rule on his fees (and thereby maybe obtaining a higher hourly rate than I awarded for the work before me), perhaps petitioner should be bound by the result.  Respondent makes a reasonable argument

---

WL 5851844 (U.S. Nov. 20, 2012) (No. 12-236).  The issue before the Supreme Court does not appear to impact on the authority of the Federal Circuit to remand a fees and costs application, only on the scope of the remand.

that the instant fees application is governed by the Federal Circuit's denial order. However, two factors militate against that view.

The first is that petitioner is seeking an award for his work on a motion for review of a special master's decision, not the decision of a judge appointed by the President and confirmed by the Senate. Although Congress charged the special masters with determining fees and costs awards as well as entitlement awards, the statute permits a petitioner to seek review of a decision denying or awarding compensation for fees and costs.[26] An unsuccessful motion for review of a special master's decision might be viewed in a different light than an unsuccessful appeal of a judge's decision.

The second and, in my view, dispositive factor is that the issue of "fees for fees" for petitioner's motion for review before the Court of Federal Claims was not before the Federal Circuit. The shared jurisdiction over fees applications allows a petitioner to select a forum in which to file fees applications—or to select all three fora.[27]

I conclude that the Federal Circuit's summary denial does not bar my consideration of petitioner's request for fees for the appellate work done before the Court of Federal Claims. Although one might read the summary denial order as saying that a petitioner who has been unsuccessful twice in his arguments for a higher hourly rate has had two bites at the apple, and thus might warrant consideration of success as a factor in requests for "fees for fees," it does not compel me to deny all fees for the motion for review.

2. Attorneys' Fees and Costs as "Compensation."

a. Authority to Award Fees and Costs.

Although the Vaccine Act's attorneys' fees provisions do not condition payment on success, the Act does differentiate between petitioners successful on the merits and those unsuccessful in obtaining compensation for their injuries. Section 15(e) of the Act states that when a petitioner is awarded compensation, "the special master or court shall also award as part of such compensation an amount to cover (A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such petition." If a

---

[26] Section 12(a) of the Vaccine Act confers jurisdiction initially on the special masters to determine whether a petitioner is entitled to compensation. If a motion for review of the special master's decision denying compensation is filed, a judge of the Court of Federal Claims may deny the motion, grant the motion and remand to the special master, or may enter a decision finding entitlement to compensation. *See* §§ 12(d)(3)(A); 12(e)(2).

[27] A petitioner may file for fees before the special master, before a judge of the Court of Federal Claims, and before the Federal Circuit. For example, a petitioner may file his initial fees application with the special master. He may then file a motion for review of the special master's decision, and seek fees for work on that motion before either the special master or the judge hearing the motion for review. Vaccine Rule 34(b). If an appeal is taken to the Federal Circuit, the fees associated with that appeal may be filed with the Federal Circuit, with the Court of Federal Claims, or with the special master. RFC 47.7; Court of Federal Claim Rule 54(d)(2); Vaccine Rule 13(b).

petitioner is not awarded compensation, he may be awarded an amount to cover "reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Attorneys' fees are classified as "part of such compensation" awarded to litigants who prevail in their Vaccine Act claims. § 15(e)(1). The same section of the Act also uses the term "compensation" in referring to the special master's discretionary award of attorneys' fees and costs to petitioners who do not receive compensation for a vaccine injury.

### b. Fees in Motions for Review of Entitlement Decisions.

Fees and costs have been awarded for work performed on motions for review of entitlement decisions on the same basis as for the initial entitlement case. [28] Those who succeed in obtaining an award for a vaccine injury, whether before the special master, or after obtaining review of an adverse decision of the special master are entitled to an award of fees and costs. For those unsuccessful on a motion for review, an award of attorneys' fees and costs is within the discretion of the special master or judge of the Court of Federal Claims before whom the application for such fees and costs is filed. § 15(e)(1).

### 3. Fees for Fees.

When fees and costs are awarded by the special master in less than the amount requested, a motion for review may be filed with the Court of Federal Claims. Historically, "fees for fees" appeals have been treated in the same manner as fees for appeals of the underlying Vaccine Act claim.[29] The success of the fee appeal has played no role in determining whether an award should be made, except when an appeal is deemed frivolous.[30] If, however, fee appeals are analyzed in terms of the

---

[28] Respondent may, of course, oppose an award of fees and costs and may also file a motion for review of a special master's fees and costs decision. For purposes of this analysis, I limit my discussion to cases in which petitioner seeks fees for fees for his or her own appeal or motion for review.

[29] In an unpublished decision in 1994, Judge Weinstein suggested that the phrase in §15(e)(1) "in any proceeding on a petition" did not encompass fees for appeals. *Tieves v. Sec'y*, HHS, No. 90-2935V, slip op. at 9 n.5 (Ct. Cl. Oct. 4, 1994). That view was not adopted by other judges or special masters.

[30] In *Morse*, Judge Bush concluded that frivolous appeals are *per se* unreasonable and thus not reimbursable under the Vaccine Act. *Morse v. Sec'y, HHS,* 93 Fed. Cl. 780, 789 (2010) (citing *Perreria,* 33 F.3d at 1377 ("counsel's duty to zealously represent their client does not relieve them of their duty to the court to avoid frivolous litigation) and *Jordan v. Sec'y, HHS*, 38 Fed. Cl. 148, 154 (1993) (noting that because petitioners' arguments on appeal did not challenge the critical finding of the special master their arguments were irrelevant and frivolous and petitioners were not entitled to an award of attorneys' fees or costs)). The Federal Circuit has identified two types of frivolous appeals. *See, e.g., Abbs v. Principi*, 237 F.3d 1342, 1345 (Fed. Cir. 2001). Appeals are deemed "frivolous as filed" when the appeal is based on arguments "that are beyond the reasonable contemplation of fair-minded people and no basis for reversal in law or fact can be or is even arguably shown." *Id.* (quoting *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578 (Fed. Cir. 1991)). "Frivolous as Argued" appeals are those where the "appellant has not dealt fairly with the court, has significantly misrepresented the law or facts, or has abused the judicial

policy behind the Vaccine Act's generous fee-shifting provisions—to ensure access to competent representation for those injured by vaccines—then perhaps the consideration of fees for fees appeals should differ from that of fees for appeals of entitlement decisions.

Should an attorney who settles a case for nuisance value be paid for two or three appeals of a decision that awarded him less than the hourly rate he requested in his initial fee application? It seems unlikely that this is what Congress intended in its extraordinarily generous grant of fees and costs to litigants who do not prevail on the merits.[31] The current appeals payment structure turns what is a fee-shifting provision designed to encourage attorneys to represent Vaccine Act petitioners into one where there is no disincentive to devoting $100,000.00 or more of attorney time for an unsuccessful appeal of a decision that cut a few hundred dollars from the fee bill submitted. No rational attorney would risk $100,000.00 of her time to recover an additional $1,000.00—except in the Vaccine program.

In *Masias*, Judge Hodges held that the Vaccine Act does not explicitly exclude payment of fees for fees for unsuccessful appeals. *Masias*, 106 Fed. Cl. at 703-04. However, he also indicated that "if limitations to fee awards would have beneficial effects for the Vaccine Program, such as discouraging costly appeals with little likelihood of success" then Congress or the appellate courts should consider them.[32] *Id.* at 704. By implication, Judge Hodges thus decided that success on an appeal should not be the sole determinant as to whether a petitioner can receive an award of fees for fees. "If a petitioner's success on appeal was zero, his award for fees is not necessarily zero; the standard to apply is whether the fees were reasonable." *Id.*

The standard articulated by Judge Hodges in *Masias* does not address whether the appeal itself was reasonable. Respondent contends that the standard should be whether fees were reasonably incurred. She argues that the wholly unsuccessful nature of the appeals in this case establishes that the fees were not reasonably incurred, and thus petitioner should not receive any fees for fees. *See* Response at 9; Res. Memo at 3. Petitioner concedes that a Vaccine Program case could have a fee

---

process by repeatedly litigating the same issue in the same court." *Abbs*, 237 F.3d at 1345 (quoting *Sparks v. Eastman Kodak Co.*, 230 F.3d 1344, 1345 (Fed. Cir. 2000)). An appeal is not deemed frivolous simply because there is a small chance of success. *Morse*, 93 Fed. Cl. at 789 (citing *Finch v. Hughes*, 926 F.2d 1574, 1578 (Fed. Cir. 1991)).

[31] Nor did Congress intend to authorize payment for ill-advised appeals of entitlement decisions; an issue addressed in several early opinions in the Vaccine Program. *See e.g.*, *Phillips v. Sec'y, HHS,* 988 F.2d 111, 113 (Fed. Cir. 1993)(J. Plager, concurring)(quoting *Johnson v. Sec'y, HHS*, No. 90-645V, 1992 WL 247565 at *2 (Cl. Ct. Spec. Mstr. Sept. 14, 1992) ("[C]ounsel who choose to pursue basically hopeless appeals of Program decisions, especially those turning on credibility determinations, should not be surprised to find that the Program will not compensate their time spent upon such appeals.")).

[32] For example, the use of a "degree of success test" like that applied in *Wagner v. Shinseki*, 640 F.3d 1255 (Fed. Cir. 2011) and relied upon by the special master in *Masias* might be used to evaluate fees for fees awards.

litigation which is "not merely unsuccessful, but is so wildly unreasonable in its inception, so predictably an unjustifiable waste of time and effort for all concerned," that fees for the litigation should be denied in their entirety. Reply at 9. Petitioner obviously does not believe that his case fits into that description.

The Vaccine Act uses the term "reasonable attorneys' fees," but does not define what they are. In fees for fees cases, does "reasonable" apply only to the hourly rate and the number of hours, or does it encompass the broader question of whether the fees requested were reasonably incurred? Respondent notes that "reasonable" has been defined as "[f]air, proper, just, moderate, suitable under the circumstances," suggesting that "reasonable" does encompass some degree of business judgment about the merits of the request for review. Response at 13 citing *Turner v. Sec'y, HHS*, No. 99-544V, 2007 WL 4410030, *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The Supreme Court has indicated that hours which are "excessive, redundant, or otherwise unnecessary" are not reasonably expended, and that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

In *Hensley*, the Supreme Court also addressed "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* The Court noted that in cases where partial or limited success was achieved it may be excessive to award fees in an amount calculated by multiplying the hours reasonably expended by the reasonable hourly rate. *Id.* at 436. Even if the claims were brought in good faith, interrelated, and deemed non-frivolous a reduction in fees is likely appropriate. *Id; see also Anthony v. Sullivan,* 982 F.2d 586, 590 (D.C. Cir. 1993) (holding that because Hensley "requires the district court to consider the relationship between the amount of the fees awarded and the results obtained, *fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation*") (emphasis original).

Respondent argues that the appeal undertaken in this case did not advance the purpose of the Act, as petitioner had already been awarded compensation, and if successful the appeal would have only benefited petitioner's counsel, not petitioner himself. *See* Response at 13-14. Because a petitioner would not individually pay an attorney for incurring fees for the appeal, respondent contends that neither should the Vaccine Trust fund. *Id.* at 14. Petitioner counters that although Mr. Rodriguez may not have benefited from his attorney receiving a higher hourly rate, future petitioners would have been helped by the availability of higher rates, resulting in attracting better-qualified and more capable counsel to the Program. Reply at 9.

4. Conclusion.

To date, it does not appear that the reasonableness of a fees for fees application has been dependent on the success of the underlying motion for review of that fees decision. Petitioners have been awarded fees for fees in many cases where the motion

16

for review of the special master's fees and costs award was entirely unsuccessful. *Masias* is only the latest example.

Notwithstanding the merit in some of respondent's arguments, it is not necessary to decide the issue of whether "reasonable attorneys' fees" encompasses an assessment of the merits of a non-frivolous appeal in a fees for fees award. Even if I applied the analyses respondent urges for the language "reasonable attorney's fees . . . incurred in any proceeding on such petition" (§ 15(e)), I would find, under the circumstances present in this case, that petitioner's motion for review was reasonable.

When petitioner applied for fees and costs for the work on his entitlement case, I denied his request for Laffey Matrix rates for Mr. McHugh and Mr. Gaynor. Shortly after my fees and costs decision was issued, one of my colleagues awarded Laffey Matrix rates to Mr. McHugh.[33] In light of this conflict, Mr. Rodriguez's motion for review of my fees and costs decision was a reasonable, non-frivolous means to resolve the issue of the applicability of those rates to the Program.[34] Petitioner is therefore entitled to some award of fees associated with the motion for review. I discuss the amount of fees requested and awarded in Section III.

C. Litigation Expenses.

The Federal Circuit's order denied petitioner's "motion for an award of attorney's fees," and did not specifically address petitioner's request for costs. However, as RFC 47.7 permits awards for both fees and costs, if the Federal Circuit wished to have granted petitioner's request for costs it could have done so. Instead, it denied petitioner's entire motion. Based on the doctrine of law of the case, I find that petitioner is entitled only to the litigation expenses associated with the motion for review in the Court of Federal Claims.

### III. Determining the Amount of Fees and Costs to be Awarded.

The Vaccine Act authorizes "reasonable attorneys' fees and other costs." § 15(e)(1). The Court of Federal Claims has recognized that it is within the discretion of the special master to determine the reasonableness of a request for attorneys' fees. *Rodriguez*, 91 Fed. Cl. at 462. The special master may reduce a fee request *sua sponte*. *Sabella v. Sec'y, HHS,* 86 Fed. Cl. 201, 208-09, 221 (2009); *Carrington ex rel. Carrington v. Sec'y, HHS*, 85 Fed. Cl. 319, 322 (2008).

---

[33] *See Walmsley v. Sec'y, HHS,* No. 06-270, 2009 WL 4064105 (Fed. Cl. Spec. Mstr. Nov. 6, 2009). Respondent did not file a motion for review of this decision, perhaps because one was pending with regard to my denial of Laffey Matrix rates in the instant case.

[34] Given the Federal Circuit decision in this case and in *Masias v. Sec'y, HHS,* (634 F.3d 1283) and *Hall v. Sec'y, HHS,* (640 F.3d 1351), future appeals based on a denial of Laffey Matrix rates would not be similarly viewed.

I apply the lodestar method, in which a reasonable hourly rate is multiplied by the reasonable number of hours, to determine the amount of attorneys' fees to be awarded. *Avera v. Sec'y, HHS,* 515 F.3d 1343*, 1347-48 (Fed. Cir. 2008).*

Respondent did not interpose specific objections to the fees and costs requested for the work performed on the motion for review before Judge Sweeney. Instead, she generally classified the number of hours spent as being "excessive and unreasonable." Response at 22. Respondent noted that given the similarities between the work done in conjunction with the Motion for Review and the briefings filed before me, the number of hours requested by petitioner should be significantly reduced. *Id.* at 22-23. Additionally, respondent urges me to consider the disproportionality between the fees awarded for the entitlement phase of the case with the fees for fees now being requested by petitioner.[35] Response at 16-17.

A. Work performed by Gilbert Gaynor.

Petitioner seeks payment for 75.6 non-travel hours and 18.7 travel hours for work done by Mr. Gaynor in connection with the motion for review before the Court of Federal Claims. Fee App. at 9; Exhibit B to Gaynor's First Declaration. In his supplemental memo, petitioner requests payment for an additional 7.9 hours for work performed in 2012. Pet. Memo at 8; Gaynor's Second Declaration. Mr. Gaynor requests an hourly rate of $340 for his non-travel hours and $170 for travel hours. Fee App. at 11.

1. Hourly Rate.

The rate Mr. Gaynor requests in his fee application ($340)[36] is higher than the rate I awarded in my initial fee decision in this case. *Rodriguez, 2009 WL 2568468 at *24* (awarding payment at an hourly rate of $275 for hours worked in 2009). Petitioner argues that the higher rate is justified because appellate work before the Federal Circuit and the Supreme Court is not "fungible" with the legal work required for Vaccine Act cases in the Office of Special Masters ["OSM"]. Reply at 14. He asserts that appellate work, involving arguments before judicial panels and the filing of certiorari petitions, among other tasks, requires different qualifications than most trial attorneys possess. *Id.* Petitioner therefore concludes that the hourly rate previously established for Mr. Gaynor's work in the OSM should not apply to the "more complex" appellate work he has billed for in this case. *Id.*

Because I am not awarding any fees for the appellate work performed before the Federal Circuit or the Supreme Court, I do not need to address petitioner's argument in great detail. However, I will note that virtually all appeals of special master decisions in the Vaccine Program, including many appeals to the Federal Circuit, are handled by the

---

[35] This later argument encompasses the total fees requested, including those denied by the Federal Circuit.

[36] Petitioner sought an even higher rate of $475 before the Federal Circuit. Fed. Cir. Fee Motion at 15, filed as Res. Ex. I.

same attorney who litigated the case before the special master, and that attorneys are typically paid the same hourly rate for the time spent advocating for their client before the special master, Court of Federal Claims, and Federal Circuit.

Respondent opposes any increase in Mr. Gaynor's hourly rate from the $275 established in my initial fee decision and upheld at all levels of appellate review. Response at 20-22. However, respondent concedes that an adjustment for inflation would be appropriate. *Id.* at 22.

I find it reasonable to compensate the time billed by Mr. Gaynor in connection with the motion for review and the instant fee application at an hourly rate of $280 for 2010, $288 for 2011, and $295 for 2012, which represent the $275 hourly rate awarded in my 2009 fee decision adjusted for inflation. *See* Bureau of Labor Statistics, CPI Inflation Calculator, available at *http://www.bls.gov/data/inflation_calculator.htm* (last accessed Feb. 28, 2013).

2. Hours Billed.

To determine a reasonable number of hours, "[a] special master is permitted and even expected to examine a law firm's time sheets and root out 'hours that are excessive, redundant, or otherwise unnecessary.'" *Davis v. Sec'y, HHS*, 105 Fed. Cl. 627, 638 (2012) (quoting *Hensley,* 461 U.S. at 434); *see also Carrington*, 83 Fed. Cl. at 323 (noting that excessive hours should be excluded from an award). However, special masters are not required to perform a line-by-line analysis of the billing records. *Broekelschen v. Sec'y, HHS,* 102 Fed. Cl. 719, 729 (2011).

a. Non-travel Hours.

Of the 75.6 non-travel hours billed by Mr. Gaynor for work before the Court of Federal Claims, 58.0 hours were billed for preparing the motion for review. These hours include such tasks as research and outlining (17.1 hours), drafting the motion (29.7 hours), and editing and cite-checking the motion (10.4 hours). *See* Billing Records, filed as Exhibit B to Gaynor's First Declaration.

Given the similarities between the issues raised in the motion with the issues briefed before me regarding the initial fees application, respondent contends that the number of hours billed by Mr. Gaynor are "excessive and unreasonable" and requests that I compensate petitioner for a significantly reduced number of hours. Response at 23-24. Petitioner argues that the issues on appeal in the motion are necessarily similar to those raised before me because of the need to preserve arguments. Reply at 13. Additionally, petitioner notes the way one frames legal issues differs between trial and appellate courts, and that parties refine and focus their arguments as the case progresses. *Id.* at 18.

I have reviewed the briefs filed in support of petitioner's initial fee application and the motion for review. Although sections of the motion for review are original, portions

of the motion are cut and pasted from the briefing filed during my consideration of petitioner's initial fee application[37] or do not contain significant legal reasoning.[38] Based on my review of the filings, I award a total of 50 hours for time spent on the research, writing, and editing of the motion.

The remainder of the non-travel hours Mr. Gaynor billed (17.6 hours) can be classified as follows: 4.0 hours for initial review of the fee decision, 1.3 hours for preparation of the judicial notice filed on January 5, 2010, 8.9 hours to prepare for oral argument, 1.8 hours for the argument, and 1.6 hours to review Judge Sweeney's decision and decide how to proceed. As the author of the motion for review, spending almost nine hours to prepare for the oral arguments seems a bit excessive.[39] However, there was a four month gap between the filing of the motion and the oral arguments, so spending some time to review the briefs and relevant case law is understandable. I will award 15 hours for these activities, which combined with the hours awarded for work on the motion itself, totals 65 non-travel hours.

b. Travel Hours**.**

Petitioner requests payment for the time spent traveling to Washington, DC for the oral argument at half of his hourly rate. I find petitioner's request to be reasonable, and will award payment for the 18.7 hours requested. *See Carter v. Sec'y, HHS,* No. 04–1500V, 2007 U.S. Claims LEXIS 249 (Fed. Cl. Spec. Mstr. July 13, 2007); *Scoutto v. Sec'y, HHS,* No. 90–3576V, 1997 U.S. Claims LEXIS 195, (Fed. Cl. Spec. Mstr. Sep. 5, 1997).

c. Additional Hours from 2012.

Petitioner requests payment for 7.9 hours worked since the instant fee application was briefed. These additional hours cover Mr. Gaynor's participation in a status conference I held to discuss the fee application, his analysis of *Cloer II*, and drafting petitioner's supplemental memorandum. *See* Supplemental Billing Records, filed as Exhibit A to Gaynor's Second Declaration. Respondent opposes payment of these additional hours. Res. Memo at 4. I find that billing some additional time for these tasks is reasonable.

Of the 7.9 hours, 5.5 hours were spent on petitioner's supplemental memorandum regarding *Cloer II*. The memo does not cite to any new case law, and

---

[37] For example, pages 18-23 of the Motion for Review are nearly identical to pages 3-7 of Petitioner's September 12, 2008 memorandum in response to my July 17, 2008 order.

[38] For example, pages 4-10 contain the statement of the case and pages 31-32 and 35-36 contain biographies of Mr. Gaynor and Mr. McHugh.

[39] A portion of the oral argument preparations (1.5 hours) was incurred for a moot court held on January 14, 2010, at George Washington University's School of Law in front of students participating in the Vaccine Injury Clinic run by Professor Peter Myers. Exhibit B to Gaynor's First Declaration at 2.

contains inconsistent and incorrect legal arguments.  *See supra* section II.A.4.  Of the remaining 2.4 hours, 0.6 hours were incurred for communications[40] between my chambers, respondent's counsel, and Mr. McHugh related to the scheduling of the status conference I held.  I award a total of 6 hours for the additional hours billed in 2012.

B.  Work performed by John McHugh.

Petitioner seeks payment for 30.0 hours of work done by John McHugh.  Fee App. at 10; Exhibit 2 to McHugh Declaration.  Like Mr. Gaynor, Mr. McHugh requests an hourly rate of $340 for his non-travel hours.[41]  Fee App. at 11.

None of the hours for which Mr. McHugh seeks payment were incurred in connection with the motion for review before the Court of Federal Claims.  All of the hours are associated with appellate work before the Federal Circuit and Supreme Court.  *See* Exhibit 2 to McHugh Declaration (Billing Records for work completed between January 26, 2010 and November 4, 2011).[42]  Accordingly, I award none of the fees requested by Mr. McHugh.

C.  Litigation Expenses.

In addition to reasonable attorneys' fees, petitioners in the Vaccine Program may be awarded reasonable litigation costs.  § 15(e)(1).

General Order #9[43] requires a statement be attached to petitioner's request for fees that delineates which litigation expenses were personally incurred by petitioner versus those sustained by petitioner's counsel.  Petitioner did not include a statement pursuant to General Order #9 with his fee application, but one was filed with his reply brief.  The statement indicates that petitioner incurred no personal litigation expenses, and that all of the expenses sought in the fee application were incurred by petitioner's counsel.

The information concerning expenses that petitioner submitted with his fee application is identical to the documentation attached to his Fed. Cir. Fee Motion.  *Compare* Exhibit C to Gaynor's Fed. Cir. Fee Motion Declaration, filed as Res. Ex. I at

---

[40] I note that the five emails exchanged contained a combined total of approximately 190 words.

[41] Before the Federal Circuit, Mr. McHugh sought an hourly rate of $450.  Fed. Cir. Fee Motion at 18, filed as Res. Ex. I.

[42] The billing records submitted are identical to those filed with Fed. Cir. Fee Motion, including the mistyped case number (1010-5093 instead of 2010-5093) in the electronic Bates Stamp.  *Compare* Exhibit 2 to McHugh Declaration *with* Exhibit 2 to McHugh's Fed. Cir. Fee Motion Declaration, filed as Res. Ex. I at 58-61.

[43]  General Order #9 is available on the court's website, http://www.uscfc.uscourts.gov/sites/default/files/General9.pdf.

44-48, and Exhibits 3-15 to McHugh's Fed. Cir. Fee Motion Declaration, filed as Res. Ex. I at 62-75, *with* Exhibit C to Gaynor's First Declaration and Exhibits 3-15 to McHugh's Declaration.

Petitioner requests reimbursement only for Mr. Gaynor's travel to the oral argument before the Federal Circuit, a request barred by law of the case doctrine. *See* Exhibit C to Gaynor's First Declaration (receipt for travel on Dec. 2, 2010). Petitioner did not include a request for reimbursement for any travel expenses associated with the motion for review. Accordingly, I award no costs.

## IV. Conclusion.

I hold petitioner is entitled to reasonable attorneys' fees and costs pursuant to §§ 15(b) and (e)(1) incurred in conjunction with his motion for review before the Court of Federal Claims. **Pursuant to § 15(e), I award $22,315.50,[44] which shall be paid in the form of a check payable jointly to petitioner and petitioner's counsel.[45]** The clerk of the court shall enter judgment in accordance herewith.[46]


**IT IS SO ORDERED.**

**/s Denise K. Vowell**
Denise K. Vowell
Special Master

---

[44] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, 42 U.S.C. § 300aa-15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y, HHS*, 924 F.2d 1029 (Fed. Cir.1991).

[45] I note that this amount is consistent with amounts awarded for other petitions for review of fees decisions. *See Broekelschen v. Sec'y, HHS,* No. 07-137V, 2012 WL 1203361 at *1 (awarding $24,183.50 for a motion for review) and at Appendix 2 (documenting that recent awards of fees and costs for motions for review have ranged from $6,600 to $39,715).

[46] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing the right to seek review.